THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TODD D HEACOCK,

Plaintiff,

v.

ROLLING FRITO-LAY SALES, LP,

Defendant.

CASE NO. C16-0829-JCC

ORDER GRANTING MOTION TO REMAND

This matter comes before the Court on Plaintiff Todd D. Heacock's motion to remand (Dkt. No. 4). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

On October 6, 2014, Plaintiff, Todd D. Heacock ("Heacock"), filed a cause of action against Defendants, Rolling Frito-Lay Sales, L.P. ("Frito Lay") and Tammy Lynn Tally ("Tally"), in King County Superior Court. (Dkt. No. 1-1). Heacock seeks general damages, attorney's fees, and costs for injuries incurred when Tally, an employee of Frito Lay, allegedly backed a Frito Lay delivery truck onto Heacock, pinning him to a loading dock and resulting in brain damage. (Dkt. No. 4 at 2, 4, 6.) The current dispute includes questions regarding Heacock's

decision to name Tally, the driver, as a defendant and whether Tally was named a defendant in good faith.

Both Frito Lay and Tally waived service, and filed an answer to Heacock's complaint on October 24, 2014. (Dkt. No. 12-6.) Heacock subsequently served two written discovery requests approximately three months after the action commenced, the first on January 12, 2015 and the second on January 22, 2015. (Dkt. No. 13 at 2–3). Both were directed jointly at Frito Lay and Tally. (*Id.*) On July 9, 2015, Frito Lay inquired as to whether Heacock intended to depose Tally in the near future, and suggested September 10, 2015 and September 17, 2015 as possible deposition dates. (Dkt. No. 14–5 at 2; Dkt. No. 14–6 at 2.) Dual party conflicts prevented Heacock from deposing Tally until December 10, 2015, approximately 14 months after the action commenced. (Dkt. No. 14–10 at 2–5; Dkt. No. 13 at 3.)

Trial was scheduled to begin in state court on June 8, 2016. (Dkt. No. 1 at 2.) On May 21, 2016, approximately 19 months after the action commenced, Heacock filed a motion to voluntarily dismiss Tally as a defendant in the case. (*Id.*) On June 3, 2016, the trial court confirmed Tally's dismissal. (*Id.*) Subsequently, on June 4, 2016, Frito Lay filed a notice of removal from state to federal court, citing § 1332 diversity jurisdiction. (Dkt. No. 1 at 1.) In response, Heacock filed a motion to remand, arguing that removal was barred by the one-year limitation provided by § 1446(c)(1). (Dkt. No. 4 at 1.)

## II. DISCUSSION

### A. Legal Standard

Federal courts are courts of limited jurisdiction. *See* 28 U.S.C. §§ 1331–1332 (2012). 28 U.S.C. § 1332 establishes federal diversity jurisdiction for causes of action that exceed an

amount in controversy of $75,000 and present complete diversity of citizenship. 28 U.S.C. § 1332 (2012); *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Complete diversity of citizenship exists when all plaintiffs and defendants are citizens of different states. *Id*. An individual is a citizen of the state in which he or she is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A "corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

Under 28 U.S.C. § 1441, a case lacking complete diversity of citizenship at the time it is filed, but which subsequently becomes removeable on the basis of diversity jurisdiction, may be removed by a defendant to federal court. *See* 28 U.S.C. § 1441 (2012). However, a defendant may not remove a case based on diversity jurisdiction more than one year after the action commenced. 28 U.S.C. § 1446 (2012). 28 U.S.C. § 1446 offers an exception to this one-year limitation if a defendant can demonstrate a plaintiff acted in bad faith to prevent removal prior to the one-year limitation's expiration. *Id.*

Neither party disputes that Heacock's claim likely exceeds the amount in controversy required under § 1332. (Dkt. No. 1 at 3.) However, while Frito Lay is incorporated in Delaware and has its principle place of business in Texas, Heacock and Tally are both domiciled in Washington. (Dkt. No. 1 at 3.) Thus, they are citizens of the same state, and naming Tally as a defendant foreclosed diversity jurisdiction under § 1332 when Heacock filed his cause of action. However, when Heacock dismissed Tally from the case, it conferred complete diversity of citizenship, and vested this Court with federal jurisdiction.

While diversity jurisdiction was established, Heacock moved to dismiss Tally as a defendant more than one year after this action commenced. Therefore, the one-year limitation on

removal barred Frito Lay from removing the action to federal court. Frito Lay invokes the exception to the one-year limitation on removal, alleging Heacock acted in bad faith to prevent removal. (Dkt. No. 1 at 2.) Frito Lay claims Heacock "dedicated nearly all labor in both discovery and deposition into targeting Frito Lay as the sole defendant in this case." (*Id*.) Frito Lay argues that this indicates Heacock never intended to litigate his claim against Tally, and that she was joined in bad faith as a non-diverse defendant solely to prevent removal. (Dkt. No. 13 at 10.) Heacock alleges he did not act in bad faith, but dismissed Tally in order to "spare her from having a mammoth judgment entered against her personally." (Dkt. No. 4 at 9.) For this reason, he argues the Court should remand this matter to state court.

**B. Bad Faith Exception**

In 2011, Congress amended § 1446 to include the bad faith exception to the statute's one-year limitation on removal of diversity actions. *See* H.R. Rep. No. 112–10, at 15 (2011). The exception was added to prevent plaintiffs from joining non-diverse parties to actions solely to prevent a defendant from removing to federal court. *See Heller v. Am. States Ins. Co.*, 2016 WL 1170891, at *2 (C.D. Cal. Mar. 25, 2016). The Ninth Circuit has "yet to address the applicable standard for the bad faith exception under section 1446(c)." *Id.* However, another district court in the Ninth Circuit held that the bad faith exception applies to plaintiffs who join defendants solely to prevent removal, and then dismiss them after the one-year deadline has expired when they could have kept them in the suit. *Id.* (citing *Aguayo v. AMCO Ins. Co*., 59 F. Supp. 3d 1225, 1266 (D.N.M. 2014)). Thus, "determining whether plaintiffs have acted in bad faith to prevent removal necessarily involves looking into the plaintiffs' subjective intent" in naming a non-diverse defendant. *Id.* In the context of awarding sanctions, the Ninth Circuit has determined that bad-faith "carries with it a high threshold and entails actions tantamount to recklessly raising a

frivolous argument or disrupting and hindering court proceedings." *Escalante v. Burlington Nat. Indem., Ltd.*, WL 6670002, at *3 (C.D. Cal. Nov. 24, 2014) (citing *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997); *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)).

While § 1446(c)(1) prevents a plaintiff from acting in bad faith to avoid federal jurisdiction, the plaintiff is the master of the complaint, and can plead her cause of action to avoid federal jurisdiction. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 999 (9th Cir. 2007). For this reason, courts strictly construe a defendant's ability to remove a case from state court to federal court. *Romo v. Teva Pharm. USA, Inc.*, 731 F.3d 918, 921 (9th Cir. 2013). In doing so, courts apply a presumption against removal and favor remand in cases of uncertainty. *Id*.

The presumption against removal, coupled with Ninth Circuit precedent holding that bad faith in the sanctions context is a high burden, leads the Court to conclude that defendants face a high burden to demonstrate that a plaintiff acted in bad faith to prevent removal. *See Heller*, 2016 WL 1170891, at *2.

**C. Frito Lay's Claims**

Frito Lay alleges that Heacock acted in bad faith by joining Tally as a defendant because he never intended to litigate his claim against her, and joined her solely to destroy diversity. (Dkt. No. 13. at 4.) While the Ninth Circuit has not yet defined "bad faith" under § 1446(c), other Ninth Circuit district courts have identified several factors that may indicate a plaintiff has joined a non-diverse defendant in bad faith.

Ninth Circuit district courts have found bad faith when plaintiffs failed to take any discovery from a defendant or failed to serve them within the one-year period of limitation. *See*

*Hamilton San Diego Apartments, LP v. RBC Capital Markets, LLC*, WL 7175598, at *4 (S.D. Cal. Dec. 11, 2014); *Heller*, 2016 WL 1170891, at *3. However, while bad faith has been found where a plaintiff dismissed a defendant without conducting any discovery, even "bare minimum" discovery attempts have been considered to not amount to bad faith. *NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.*, 2014 WL 1671659, at *5 (E.D. Cal. Apr. 28, 2014), *report and recommendation adopted*, 2014 WL 2619599 (E.D. Cal. June 6, 2014). A plaintiff who added a non-diverse defendant in response to a defendant's attempt to remove an action, and subsequently dismissed that defendant shortly after the deadline for removal expired, was held to have acted in bad faith. *See NKD Diversified Enterprises, Inc.*, 2014 WL 1671659, at *4. Further, bad faith was found when a plaintiff offered inconsistent explanations as to why a defendant was not dismissed earlier in the litigation. *Heller*, 2016 WL 1170891, at *3. However, other district courts have found the dismissal of a non-diverse defendant two to three months after the deadline for removal expired to be sufficient time to not signify that a plaintiff acted in bad faith. *See NKD Diversified Enterprises, Inc.*, 2014 WL 1671659, at *4; *Hamilton San Diego Apartments, LP*, 2014 WL 7175598, at *5.

In summary, this Court's review indicates that other district courts in this circuit have applied a strict standard and found bad faith when a plaintiff failed to actively litigate a claim against a defendant *in any capacity*. Further, these decisions highlight that the timing of naming a non-diverse defendant, the timing of dismissal, and the explanation given for that dismissal are relevant to the bad faith inquiry. The Court finds these factors persuasive in conducting its analysis.

In arguing that Heacock acted in bad faith, Frito Lay points to a bad faith standard set forth by the District of New Mexico in *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225 (D.N.M.

2014). In *Aguayo*, the court similarly stated that determining whether a plaintiff has acted in bad faith requires looking to whether they have actively litigated their claim against a non-diverse defendant. *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1263 (D.N.M. 2014). The *Aguayo* court found active litigation can be determined by whether a plaintiff asserts valid claims, takes discovery, and negotiates settlement, among other things. *Id*. If a plaintiff does not actively litigate against a non-diverse defendant, then bad faith is established. *Id*. However, if a plaintiff does actively litigate, "then good faith is rebuttably presumed." *Id*.

While the *Aguayo* court pointed to inactive litigation as the primary indicator of bad faith, the court defined "active litigation" broadly, indicating plaintiffs may be motivated to litigate a claim against a defendant for reasons other than collecting damages. *Aguayo*, 59 F. Supp. at 1264–65. Further, the court argued that "bad faith should not refer simply to a desire to stay in state court." *Aguayo*, 59 F. Supp. at 1273. There is nothing "inherently invidious or 'bad faith' about using deliberate tactics to defeat federal jurisdiction," nor is there anything "wrong with plaintiffs having a preference for state court." *Id.* For this reason, the court determined that, for the bad faith exception to apply, a plaintiff's desire to stay in state court must be the but-for cause of their decision to keep a non-diverse defendant in the case past the one-year deadline for removal. *Id.*

Referencing the *Aguayo* court standard, Frito Lay argues that Heacock did not actively litigate against Tally, and that this failure is demonstrated by the fact that none of the discovery requested from Frito Lay and Tally was "focused on Tally's potential liability." (Dkt. No. 13 at 10.) Instead, Frito Lay argues that all discovery was focused on Tally's relationship with Frito Lay, on Frito Lay's potential liability for her actions, and on establishing and supporting Frito Lay's independent liability. (Dkt. No. 13 at 10.) Additionally, Frito Lay argues that Heacock

failed to take Tally's deposition until he was prompted to do so by defense counsel, and then only after the one-year deadline for removal had passed. (*Id.*) Further, Frito Lay asserts that during Tally's deposition, Heacock posed questions solely focused on her employment with Frito Lay. (*Id*.) It argues that this demonstrates Heacock's his lack of intention to actively litigate his claim against Tally. (*Id.*)

In addition to arguing that Heacock failed to actively litigate against Tally, Frito Lay argues that Heacock demonstrated bad faith by dismissing Tally from the case 19 months after it commenced, and that this dismissal offered him a strategic advantage by emphasizing Frito Lay's liability for his injuries. (Dkt. No. 13 at 11.) Further, Frito Lay asserts that bad faith is supported by the fact that Tally's dismissal was not conditioned on any material benefit to Heacock, and by his failure to offer a valid explanation for not dismissing her sooner. (*Id*. at 10-13).

While the examples cited by Frito Lay do indicate that Heacock intended Frito Lay to be the primary defendant in this case, they do not rise to the level of inactive litigation as discussed by the court in *Aguayo*. Heacock may not have been motivated by a desire to collect damages from Tally, but instead in part by a desire to remain in state court. However, the evidence presented by Frito Lay does not demonstrate that this desire was the but-for cause of his actions. Thus, Frito Lay's assertions do not elevate Heacock's actions to bad faith under the *Aguayo* court's broadly construed, active litigation standard.

Frito Lay's assertions similarly fail to meet the standard of inactive litigation discussed by Ninth Circuit district courts. Heacock served Tally with two discovery requests and deposed her. Even if Heacock's efforts constitute a bare minimum effort to litigate against Tally, that is sufficient to qualify as "active litigation." While Heacock failed to depose Tally until after the

one-year limitation on removal had passed, the record indicates that this failure resulted from rescheduling by both parties. Thus, Frito Lay has not demonstrated that this failure was solely caused by Heacock's effort to prevent removal.

Further, Heacock did not name Tally as a defendant solely in response to Frito Lay's attempt to remove the action; he named her as a defendant at the outset of his case. While Frito Lay argues that dismissing Tally more than seven months past the expiration of the one-year limitation is indicative of bad faith, even a time period closer to the one-year mark, two or three months, has been deemed acceptable by other Ninth Circuit district courts. Frito Lay argues that Tally's dismissal was not conditioned on any material benefit to Heacock. Frito Lay further alleges that this dismissal was intended to offer Heacock a strategic advantage in court. This argument fails to prove that Heacock named Tally at the outset of the lawsuit solely to prevent removal, and implies that Heacock benefitted from dismissing her as a defendant; this goes against Frito Lay's argument. Heacock's explanation for dismissing Tally has remained consistent. He has repeatedly asserted that she was voluntarily dismissed in order to spare her the entry of a large judgment against her. Thus, the Court concludes that Heacock's actions do not demonstrate bad faith.

As master of his complaint, Heacock was entitled to use deliberate tactics to defeat federal jurisdiction. Absent a heightened indication of bad faith on the part of Heacock, the Court cannot conclude that he joined Tally in bad faith solely to prevent removal.

## III. CONCLUSION

The Court concludes that Heacock did not act in bad faith either in naming Tally as a defendant, or in dismissing her. Accordingly, removal was untimely under 28 U.S.C. § 1446(c).

For the foregoing reasons, Plaintiff's motion to remand (Dkt. No. 4) is GRANTED.

DATED this 27th day of July 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE